# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Security Life Insurance Company of America, a Minnesota corporation,

Plaintiff,

v.

Dean Stewart, an Oklahoma resident, James Dunham, a Louisiana resident, Charles Brooks, a Georgia resident, and Terry Eugene Elsner, a Georgia resident,

Defendants.

Civil No. 01-1677 (RHK/JMM)

**MEMORANDUM OPINION AND ORDER**

Robert L. Meller, Jr. and Cynthia L. Hegarty, Best & Flanagan, Minneapolis, Minnesota, for Plaintiff.

James O. Redman, Bassford, Lockhart, Truesdell & Briggs, Minneapolis, Minnesota, and Phillip P. Owens, II, and Chris Harper, Harper Law Offices, Oklahoma City, Oklahoma, for Defendants Dean Stewart and James Dunham

Paul A. Sortland, Sortland Law Offices, Minneapolis, Minnesota, for Defendants Charles Brooks and Terry Eugene Elsner.

## Introduction

Plaintiff Security Life Insurance Company of America, a Minnesota-based company, brought a diversity action in this Court alleging that four non-resident insurance agents breached their contracts with Security Life, or have been unjustly



NOV 28 2001
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

enriched by Security Life, in that they have failed to repay commissions advanced to them in connection with thousands of policies that lapsed due to the non-payment of premiums within the first year of the policy. Two of the defendants, Dean Stewart and James Dunham, have moved pursuant to 28 U.S.C. § 1404(a) to transfer this case to the Northern District of Georgia. For the reasons set forth below, the motions are denied.

**Background**

Security Life sells insurance products such as life insurance in several states, including Georgia. On May 1, 1995, Dean Stewart, an Oklahoma resident and licensed insurance agent appointed by Security Life to sell its insurance products, signed a Managing Producer Contract with Security Life. That contract granted Stewart the authority to "organize, train, and maintain a sufficient agency force in the allotted territory;" the contract refers to these sub-agents of Stewart as "producers." The contract further provided that Stewart, as a managing producer,

> shall be responsible to the Company for all loss or damage arising from business done by or entrusted to producers, employees, or others appointed, employed or recognized as such by him or her and shall identify [sic] and hold the Company harmless from any and all expenses, costs, causes of action, loss or damages resulting from fraudulent or unauthorized acts or omissions of himself or any other of such persons with respect to such business.

(Meller Aff. Ex. D.)

It appears that, in the spring of 1997, two of Stewart's subagents -- James Dunham, a Louisiana resident, and Charles Brooks, a Georgia resident -- also signed

Managing Producer Contracts with Security Life. (Meller Aff. Exs. B & C.) One year later, movant Dunham signed a document called an Agent Agreement which provides, inter alia, that "venue for any action, suit, proceeding or dispute shall be exclusively in Minneapolis, Minnesota." (Meller Aff. Corrected Ex. C (handed up to the Court at the hearing).) In early 1999, another Georgia resident, Terry Elsner, signed an "Agent Agreement" with Security Life. (Meller Aff. Ex. A.) Like Dunham's Agent Agreement, the agreement signed by Elsner provided that venue shall be exclusively in Minnesota.

Security Life alleges that there is the following hierarchy of supervision and responsibility among the four defendants: Elsner is at the bottom of the chain, Brooks is responsible for Elsner's conduct and indebtedness to the company (as well as his own), Dunham is responsible for both Brooks and Elsner's conduct and indebtedness to the company (as well as his own), and Stewart – at the top of the chain – is responsible for the conduct and indebtedness of the three other defendants (as well as his own).

Security Life alleges that, from early 1999 through the spring of 2001, Elsner procured approximately 4,100 policies which Security Life issued to a Georgia business entity called the Twin Oaks Foundation. Of those policies, 3,821 were cancelled for nonpayment of premiums within twelve months after the policies were taken out. For each policy written, Elsner had received an advance from Security Life of nine months' commission at the time the policy was written. Security Life alleges that, if it cancels for nonpayment of premiums within the first six months a policy on which commissions have

been advanced, it has the right to offset against the agent's account balance with Security Life the full amount of the commissions advanced to the agent. If a policy is cancelled for nonpayment of premiums between the seventh and twelfth months, Security Life has the right to offset any pro rata share of unearned commissions against the agent's account. If there is no account balance against which a setoff may be done, the amounts owing to Security Life become a general debt of the agent to the company.

Security Life alleges that all of the defendants received commissions from Elsner's sale of policies to the Twin Oaks Foundation. Security Life further alleges that, in light of the numerous policies issued to Twin Oaks Foundation that were cancelled for nonpayment of premiums within the first year, Elsner presently owes Security life approximately $850,000, Brooks owes approximately $955,000, and Dunham and Stewart owe the company approximately $995,000.

**Analysis**

A federal district court may transfer a case to another district, even if venue is proper in the original district, if it finds that the other district would be a more convenient venue. Section 1404(a) of Title 28 of the United States Code provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The goal of § 1404(a) is to prevent waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and

expense. Van Dusen v. Barrack, 376 U.S. 612, 616 (1964). In determining whether to transfer venue under § 1404(a), courts consider several factors including: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice. Terra Int'l, Inc., v. Mississippi Chem. Corp., 119 F.3d 688, 691 (8th Cir.), cert. denied, 522 U.S. 1029 (1997). The party seeking to transfer a case bears the heavy burden of establishing that the balance of the § 1404(a) factors strongly favors a transfer. See Graff v. Qwest Communics. Corp., 33 F. Supp. 2d 1117, 1121 (D. Minn. 1999) (Doty, J.) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)).

This case presents an added wrinkle to the transfer of venue analysis. Two of the defendants here, movant James Dunham and Terry Elsner, signed Agent Agreements providing that the exclusive venue for actions, suits, proceedings, or disputes between the parties shall be in Minnesota. A "valid and applicable forum selection clause" may be considered a "'significant factor that figures centrally'" in the court's decision to transfer venue. Terra Int'l, 119 F.3d at 691 (quoting Stewart Organization, Inc., v. Ricoh Corp., 487 U.S. 22, 29 (1988)). "Forum selection clauses are prima facie valid and are enforced unless they are unjust or unreasonable or invalid for reasons such as fraud or overreaching." M.B. Restaurants, Inc. v. CKE Restaurants, Inc., 183 F.3d 750, 752 (8th Cir. 1999) (citing M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972)).

Neither movant has addressed the forum selection clause in the Agent Agreements, let alone argued that it is invalid or inapplicable. Nor have the movants discussed the

impact of the forum selection clause on the Court's transfer of venue analysis. The Court concludes that the forum selection clause weighs significantly against a transfer of this action to the Northern District of Georgia. The Court now turns to the other factors identified in § 1404(a).

**A. Convenience of the parties**

In this case, the plaintiff is a Minnesota company with its principal place of business in Minnesota. Defendants Elsner and Brooks are Georgia residents; defendant Dunham is a Louisiana resident; and defendant Stewart is an Oklahoma resident. It is clear that there will be a degree of inconvenience to the two movants -- Stewart and Dunham -- regardless of whether this matter is litigated in Minnesota or Georgia. The two Georgia defendants have retained counsel in Minnesota and have appeared in this matter but have not joined in the motion to transfer.

For the plaintiff, Minnesota is obviously a convenient forum. It is headquartered in this district, its employees are located in this district, and its records relating to this action are in this district. Furthermore, the plaintiff was the first to file suit. As this Court has observed:

> There is a "normal presumption in favor of a plaintiff's choice of forum." Christensen Hatch Farms, Inc. v. Peavey Co., 505 F.Supp. 903, 911 (D. Minn. 1981). This is particularly true where the plaintiff resides in the district in which the lawsuit was filed. Sky Valley Ltd. Partnership v. ATX Sky Valley, Ltd., 776 F.Supp. 1271, 1276 (N.D. Ill. 1991).

Graff, 33 F. Supp. 2d at 1121. The Court concludes that the convenience of the parties

weighs in favor of leaving this matter venued in Minnesota.

## B. Convenience of the witnesses

The convenience of the witnesses factor relates to the "relative ease of access to sources of proof." Gulf Oil Corp., 330 U.S. at 508. Dunham and Stewart argue that the "vast majority" of witnesses and documents related to both the Plaintiffs' claims and the movants' cross-claims against Brooks and Elsner are located in the Northern District of Georgia. Although the movants contend that the Northern District of Georgia is "where Elsner and Brooks initiated their scheme to write these policies and obtain the advanced commissions which are the subject of Plaintiff's action," it is unclear what witnesses in Georgia – other than Brooks and Elsner themselves – would be necessary to either defend against the Plaintiff's claims or substantiate the movants' cross-claims for indemnification and tortious interference with contract.[1] Nor have the movants identified any categories of documents in Georgia that might be relevant to this matter.

By contrast, Plaintiff has indicated that several of its employees will testify from documents located in Minnesota about (a) how the Plaintiff's commission program

[1] The movants stated that it might be necessary for them "to bring in the Twin Oaks Foundation as a third party defendant for its involvement in this scheme." Neither of the movants indicated in the Rule 26(f) report, however, that they had any plan to add additional parties to the action. (Nov. 6, 2001 Rule 26(f) Report at 3, § (b)(1)). Even assuming that the Twin Oaks Foundation was a non-party witness or that the movants sought to take third-party discovery from the Foundation, the movants have not provided the Court with any real insight concerning the potential evidence to be developed from the Foundation.

works, (b) Brooks and Elsner's sale of policies in Georgia, (c) the lapse of a large number of those policies due to the insured's failure to pay premiums during the first twelve months of the insurance contract, (d) the commissions advanced to the defendants on those policies, and (e) the calculations used to determine the amounts the defendants allegedly owe Security Life following the lapses of those policies. The Court cannot conclude that the "vast majority" of documents and witnesses pertaining to the Plaintiff's claims are located in Georgia.

The Court further notes that the movants have asserted counterclaims in this action alleging that Security Life has (a) breached its fiduciary duty to them by accepting the insurance contracts at issue, and (b) wrongfully refused to pay sums owed to the movants on the erroneous ground that plaintiff was entitled to offset those sums. It appears that the evidence that would substantiate the counterclaims rests with Security Life and would be discoverable here in Minnesota. The movants have not argued otherwise. Viewing the record in its entirety, the Court concludes that the movants have failed to demonstrate that this factor weighs in favor of transferring venue to Georgia.

**C. Interests of Justice**

A number of considerations are generally relevant in evaluating this factor of the § 1404(a) analysis, including the relative familiarity of the two courts -- the original forum and the proposed transferee forum -- with the law to be applied, the relative ability of the parties to bear the expenses of litigating in a distant forum, judicial economy, the

plaintiff's choice of forum, obstacles to a fair trial, and each party's ability to enforce a judgment. See Graff, 33 F. Supp. 2d at 1122. The movants make no argument regarding this Court's relative ability to apply Georgia law (if, that is, Georgia law actually applies to Security Life's contracts with the defendants -- an issue the movants do not squarely address). Nor do the movants suggest that the docket in Georgia is any more expeditious than this Court's docket. The movants have identified no obstacles to a fair trial if this matter were tried in Minnesota. In addition, the movants have not complained that, were they to prevail on their counterclaims or cross-claims, they would have difficulty enforcing a judgment.

Ultimately, the movants' argument with respect to the interests of justice element boils down to the assertion – made five times in a nine-page memorandum – that Security Life is a large, national insurance corporation that can bear the expense of litigating in a distant forum better than the individual defendants. This argument is not sufficient to overturn the plaintiff's choice of forum. The movants are, in essence, asking the Court to shift the burden of litigating in a foreign state to the party opposing the transfer motion. This the Court cannot and will not do. Graff, 33 F. Supp. 2d at 1121 (citing Van Dusen v. Barrack, 376 U.S. at 646) ("[A] transfer should not be granted if the effect is simply to shift the inconvenience to the party resisting the transfer.") The Court concludes that the interests of justice do not strongly favor transferring this action to the Northern District of Georgia.

## Conclusion

Based on the foregoing, and all of the files, records and proceedings herein, **IT IS ORDERED THAT**

1. Defendant Dean Stewart's Motion to Transfer Venue (Doc. No. 3) is **DENIED**; and

2. Defendant James Dunham's Motion to Transfer Venue (Doc. No. 5) is **DENIED**.

Dated: November 28, 2001

RICHARD H. KYLE
United States District Judge